**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Window World of Chicagoland, LLC,
*et al.*,

        Plaintiffs,

        v.

Window World, Inc., *et al.*,

        Defendants.

Case No. 13 C 4624

Judge John Robert Blakey

**MEMORANDUM OPINION AND ORDER**

Two sets of Plaintiffs—(1) Window World of Chicagoland, LLC and David Hampton (together, the "Hampton Parties"); and (2) Kenneth Dillingham, Debbie Dillingham and their company, Suntec, Inc. (collectively, the "Dillinghams")—have jointly sued Window World, Inc. and four of its employees (Dana Deem, Marie Whitworth, Ruben Whitworth and Tammy Whitworth) (collectively, "Window World"). Plaintiffs have brought claims for fraud, breach of contract and violation of the Illinois Franchise Disclosure Act ("IFDA").

Defendants filed an amended motion to dismiss [30]. The motion is granted, with all Counts dismissed with prejudice, except for Counts VI (fraudulent inducement) and VII (breach of contract). Counts VI and VII are dismissed without prejudice.

## I. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), this Court must construe the Complaint [1] in the light most favorable to Plaintiff, accept as true all well-pleaded

facts and draw reasonable inferences in their favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915. Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

To survive Defendant's motion under Rule 12(b)(6), the Complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II. Facts

### A. The Hampton Parties

Window World entered into multiple license agreements with Mr. Hampton from 2005 through 2009, allowing the Hampton Parties to sell windows and related products under the "Window World" brand name. Complaint ¶¶ 31, 32, 47. At that time, the relationship between the parties was not formally classified as franchisor/franchisee. Complaint ¶¶ 60, 83.

On October 28 2011, Window World advised the Hampton Parties that their relationship with Window World was, in fact, as a franchisee. Complaint ¶ 60.

Window World gave the Hampton Parties two options: (1) agree to become a Window World franchisee in 35 days; or (2) rescind the License Agreements and cease operating under the Window World name. Complaint ¶ 86. If the Hampton Parties chose to rescind, Window World said it would refund the license fee minus the profits they had earned. Complaint ¶ 86.

On November 29, 2011, Window World entered into a Final Judgment and Consent Decree with the Illinois Attorney General. Complaint ¶ 91. The Decree found that from 2003 to 2011, Window World had entered into at least 14 license agreements in Illinois that were in fact franchise arrangements. Complaint ¶¶ 90-91; Final Judgment and Consent Decree [1-14] ¶ 6.

On January 26, 2012, the Hampton Parties sued Window World (among others) and brought claims of fraud, breach of contract and violation of the IFDA. The case was assigned to Judge Lindberg and was captioned: *Window World of Chicagoland, LLC v. Window World, Inc.*, Case No. 12 C 579 ("Case 579"). In Case 579, attorney Alice Kelly represented the Hampton Parties.

On April 9, 2012, Window World moved to dismiss the Second Amended Complaint. Case 579, DE 30. On May 23, 2012, Judge Lindberg granted in part and denied in part the motion. Case 579, DE 46. In particular, the Court did not dismiss the IFDA and breach of contract claims. On May 29, 2012, the Hampton Parties filed a Third Amended Complaint. Case 579, DE 48.

On June 4, 2012, Window World brought its own suit against the Hampton Parties (among others). The case was initially assigned to Judge Grady and was

captioned: *Window World, Inc. v. Hampton*, Case No. 12 C 4329 ("Case 4329"). Soon thereafter, on June 14, 2012, the case was reassigned to Judge Lindberg and consolidated with Case 579. Case 4329, DE 5. While the docket sheet in Case 579 confirms that it was consolidated with Case 4329, *see* Case 579, DE 51, the cases apparently remained separate for purposes of notices sent by the Clerk's office.

Although Ms. Kelly never entered an appearance for the Hampton Parties in Case 4329, she accepted waiver of service forms from attorney Scott Walton, counsel for Window World in both cases. Ms. Kelly provided the waiver forms for the Hampton Parties to Mr. Hampton, who signed them on behalf of the Hampton Parties on June 11, 2012. Case 4329, DE 25-1 at 1 ¶ 5; Case 4329, DE 30-1 at 3-4; Case 4329, DE 31 at 3. The waiver forms were returned and filed on June 18, 2012. Case 4329, DE 6; Case 4329, DE 7. The forms state that the signatory understands that a judgment may be entered against them if an answer or Rule 12 motion is not filed within 60 days (which was June 7, 2012).

On June 25, 2012, the Hampton Parties filed a notice of voluntary dismissal without prejudice in Case 579, which Judge Lindberg granted on July 5, 2012. Case 4329, DE 53; Case 4329, DE 55. Also on July 5, 2012, Ms. Kelly informed counsel for Window World that she did not represent the Hampton Parties in Case 4329. Case 4329, DE 30-2 at 4.

By August 8, 2012, more than 60 days had expired without the Hampton Parties having filed an answer or Rule 12 motion in Case 4329. Window World thus made an oral motion for entry of default at the status hearing that day, which was

granted. Case 4329, DE 9. Judge Lindberg held additional hearings related to the default, which counsel for Window World attended, but for which Ms. Kelly received no notice because she was no longer representing the Hampton Parties. Case 4329, DE 30 at 1 ¶¶ 2-5.

On October 3, 2012, Window World moved for default judgment under Rule 55(b). Case 4329, DE 12. Mr. Hampton never received a copy of the motion, which counsel for Window World electronically filed but did not mail to him. Nor was Mr. Hampton informed of the August 8, 2012 status hearing or Window World's oral motion for default. Case 4329, DE 25-1 at 3 ¶¶ 19-22.

On October 10, 2012, Judge Lindberg held a hearing on Window World's motion for default judgment which only counsel for Window World attended. Case 4329, DE 13. On December 4, 2012, Judge Lindberg entered a Final Judgment Order in favor of Window World against the Hampton Parties on all counts, ordering the Hampton Parties to pay $107,959.85 in damages, costs and expenses. Case 4329, DE 19. Mr. Hampton never received a copy of the final judgment order. Case 4329, DE 25-1 at 4 ¶ 23. Case 4329 was reassigned to Judge Durkin on August 7, 2013, when Judge Lindberg retired. Case 4329, DE 24.

On June 24, 2013, the Hampton Parties and the Dillinghams filed the instant lawsuit, with Case No. 13 C 4624 ("Case 4624"). The Hampton Parties again brought IFDA and breach of contract claims, among others, against Window World. The case initially was assigned to Judge St. Eve. Ms. Kelly entered an appearance

as local counsel, and attorney Jonathan Fortman, current counsel for the Hampton Parties, also entered an appearance. [2]; [3].

On July 17, 2013, Mr. Hampton, while reviewing a 2013 Window World franchise disclosure document, learned of the default judgment entered in Case 4329. Case 4329, DE 25-1 at 4 ¶ 25. Mr. Hampton contacted his attorney who confirmed that default judgment had been entered. Case 4329, DE 25-1 at 4 ¶ 25.

On July 29, 2013, less than two weeks later but nearly eight months after Judge Lindberg entered default judgment, Mr. Fortman entered an appearance for the Hampton Parties in Case 4329. Case 4329, DE 21. The same day, the Hampton Parties filed a motion to set aside the December 4, 2012 default judgment order. Case 4329, DE 22. This motion was later amended on August 9, 2013. Case 4329, DE 25.

On August 5, 2013, Defendants moved to dismiss this lawsuit (Case 4624). [10]. One week later, on August 12, the Hampton Parties (and the Dillinghams) moved to stay this litigation. [13]. On August 14, 2013, Case 4329 was reassigned to Judge Durkin as related to Case 4624. [19]. On August 15, 2013, Judge Durkin granted Ms. Kelly's motion to withdraw as counsel in Case 4624. [21].

On April 1, 2014, in Case 4329, Judge Durkin granted the motion to vacate the December 4, 2012 default judgment order. Case 4329, DE 38. Judge Durkin also awarded Window World its costs and fees for having to pursue the default judgment in Case 4329. Case 4329, DE 38.

Having successfully had the default judgment order vacated, later that month, on April 25, the Hampton Parties moved in this case to have Case 4329 consolidated with it. [23]. Judge Durkin granted the motion and defined its scope at the April 30, 2014 status and motion hearing. The Court stated that it would:

> let the dust settle on whether or not amended complaints and amended counterclaims should -- in other words, whether we turn this into a single complaint or we just keep it as two separate complaints but run discovery on the same schedule. I think we can decide that later.

[25]; 4/30/14 Hearing Transcript [34] at 5.

On June 2, 2014, in Case 4329, after having received a petition for fees and costs from Window World, Judge Durkin ordered the Hampton Parties to pay $32,855.88 within 30 days. Case 4329, DE 46. The Hampton Parties did not comply with this order, and, on August 5, 2014, Judge Durkin reinstated the December 4, 2012 default judgment in Case 4329. Case 4329, DE 54.

On January 15, 2015, this lawsuit (Case 4624) was reassigned to the undersigned Judge Blakey. [41].

## B.    The Dillinghams

On December 10, 2003, the Dillinghams entered into a license agreement ("2003 License Agreement") with Window World. The Agreement gave the Dillinghams the right to sell windows and related products under the Window World brand name in certain counties in Southern Illinois ("Southern Illinois Territory"). Complaint ¶ 65.

On March 26, 2007, the Dillinghams entered into a second license agreement with Window World ("2007 License Agreement"). That agreement allowed the

Dillinghams to sell windows and related products under the Window World name in the territory described as Prairie Land, Illinois ("Prairie Land Territory"), which comprised eight counties. Complaint ¶¶ 66-67. The Dillinghams also expanded the Southern Illinois Territory to include four new counties. Complaint ¶¶ 66, 68. Window World did not present the Dillinghams with any franchise disclosure document before signing the 2003 and 2007 License Agreements. Complaint ¶ 77. The territories were operated through the corporation Suntec and under the trade names: "Window World of the Prairie Land" and "Window World of Southern, IL." Complaint ¶ 69.

After signing the 2003 License Agreement, the Dillinghams attended training sessions and national and regional meetings where discussions occurred about expected profits and other matters. Complaint ¶ 70. They received certain documents, including one titled: "Window World Target Profit & Loss, Proposed Budget & Budgeting." Complaint ¶ 70. In these documents, Window World represented that owners would earn a net profit of $120,000 plus an owner's salary of $40,000 to $50,000 per territory. Complaint ¶ 70. Window World representatives, including the individual Defendants here, touted these numbers as representing the amounts each territory owner should expect to earn per territory. Complaint ¶ 71. The representatives also told the Dillinghams that exclusive territories would be protected by "buffer" or "grey" areas. Complaint ¶ 72. These buffer different trade territories, preventing overlap and encroachment between licensees. Complaint ¶ 84.

Under the 2003 and 2007 License Agreements, the Dillinghams encountered several instances where other Window World licensees encroached on their territory and disparaged their reputation and name. Complaint ¶ 73. Each time, the Dillinghams brought these incidents to Window World's attention, yet Window World took no action to protect the Dillinghams. Complaint ¶ 73.

According to the Dillinghams, in early 2009, four of their salesmen left and started their own business in competition with the Dillinghams. Complaint ¶ 78. The Dillinghams also brought this to Window World's attention, yet Window World again failed to protect them. Complaint ¶ 78. It took until October 2009 for the Dillinghams to reach the level of sales achieved prior to the four departures. Complaint ¶ 78. To recover sales during this time, the Dillinghams focused their efforts on the Southern Illinois Territory; in turn, they left the Prairie Land Territory to, in their own words, "coast." Complaint ¶ 79. The Dillinghams informed Window World of this sales strategy, and Window World agreed with its execution. Complaint ¶ 79. Window World told the Dillinghams to get both territories up and running as soon as possible. Complaint ¶ 79.

On March 12, 2010, the Dillinghams received a phone call from Sean Gallagher, a Window World representative, who said the Dillinghams had breached their sales obligations in the Prairie Land Territory under the 2007 License Agreement. Complaint ¶ 80. Mr. Gallagher said that, as a result, Window World was taking back both the Southern Illinois and Prairie Land Territories. Complaint ¶ 80. Mr. Gallagher gave the Dillinghams 90 days to finish their business in those

Territories.  Complaint ¶ 80.  The Dillinghams continued to operate their business during those 90 days.  Complaint ¶ 81.  They do not allege whether Window World in fact rescinded the Southern Illinois and Prairie Land Territories at the expiration of 90 days.

## III.  Analysis

### A.    The Hampton Parties (Counts I to V)

The Hampton Parties brought claims for fraudulent inducement, breach of contract and violation of Sections 5, 6 and 10 of the IFDA, 815 ILCS 705, based on their licensing arrangement with Window World.

Window World argues that these claims are barred under the doctrine of *res judicata* because Judge Lindberg entered a final judgment—the December 4, 2012 default judgment—in an earlier action, Case 4329.  Because *res judicata* is an affirmative defense, a defendant typically should raise it in its Answer and then move for judgment on the pleadings under Rule 12(c).  *See Carr v. Tillery*, 591 F.3d 909, 912-13 (7th Cir. 2010).  Nonetheless, this Court considers the issue now because Rule 12(c) motions are reviewed under the same standard as Rule 12(b)(6) motions to dismiss, *Piscotta v. Old Nat'l Bancorp,* 499 F.3d 629, 633 (7th Cir. 2007); the *res judicata* defense here can be established from the Complaint and the public record, *see Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008); and the parties have fully briefed the issue.

To prevail on its *res judicata* argument, Window World must establish that there is: (1) a final judgment on the merits that has been rendered by a court of

competent jurisdiction; (2) an identity of the causes of action; and (3) an identity of parties or their privies. *Hudson v. City of Chicago*, 889 N.E.2d 210, 213 (Ill. 2008). There is no dispute here that a default judgment can be a final judgment on the merits for *res judicata* purposes. Nor can there be. *See Schlangen v. Resolution Trust Corp.*, 934 F.2d 143, 146 (7th Cir. 1991); *Buford v. Palisades Collection, LLC*, 552 F. Supp. 2d 800, 807 (N.D. Ill. 2008). Rather, the parties dispute whether the December 4, 2012 default judgment was in fact final.

The Hampton Parties argue that Case 4329 was consolidated with this case (Case 4624) before August 5, 2014, when Judge Durkin reinstated the default judgment. [33] at 4-5. From this premise, the Hampton Parties argue that the December 4, 2012 default judgment is not a judgment in an earlier action but rather an earlier judgment in this one that can be revisited. *Id.*

That premise is mistaken. Rule 42(a) vests this Court with broad discretion when consolidating cases. *See also Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Insurance Co.*, 671 F.3d 635, 640 (7th Cir. 2011). Accordingly, this Court analyzes the scope of the consolidation order to determine whether Case 4329 remained separate from this one. The record clearly shows that Judge Durkin exercised that discretion only to coordinate discovery between Case 4329 and Case 4264, but never fully consolidated them. Thus, the December 4, 2012 default judgment is a final judgment on the merits in an earlier action.

First, on April 30, 2014, Judge Durkin granted the Hampton Parties' motion to consolidate orally, yet limited that order to only coordinating the discovery

schedules between the two cases.  Judge Durkin expressly reserved the issue of full

consolidation for another day, stating that he would:

> let the dust settle on whether or not amended complaints and amended
> counterclaims should -- in other words, whether we turn this into a
> single complaint or we just keep it as two separate complaints but run
> discovery on the same schedule.  I think we can decide that later.

4/30/14 Hearing Transcript [34] at 5.

Second, at the June 2, 2014 status hearing, Judge Durkin reiterated that the

cases "[were not] combined."  6/2/14 Hearing Transcript [35] at 2-3.

Third, at the July 29, 2014 status hearing, when it became clear that the

Hampton Parties would not pay the fees and costs ordered by the Court when it set

aside the December 4, 2012 default judgment order, the Hampton Parties proposed

that the Court un-consolidate Case 4329 from Case 4624 "because ... now that case

will be final for purposes of appeal."  7/29/14 Hearing Transcript [37] at 5.  Judge

Durkin responded that the cases were "never consolidated in the sense [they] went

from two numbers to one," but "were joined for purposes of discovery."  7/29/14

Hearing Transcript [37] at 5.  Judge Durkin also stated that "the case where the

default judgment was entered by Judge Lindberg, which [the Court] vacated, [was]

going to be ... reinstated."  7/29/14 Hearing Transcript [37] at 5-6.

Fourth, on August 5, 2014, the Court reinstated the default judgment order.

[54].  On September 8, 2014, the Hampton Parties filed a motion to sever Case 4624

from Case 4329 and for a finding that the August 5, 2014 order was final for

purposes of appeal under Rule 54(b).  Counsel for the Hampton Parties later

withdrew the motion, presumably recognizing that Cases 4329 and 4624 were coordinated but never fully consolidated. [40].

Having established that the first element of *res judicata* is met, this Court turns to the next two requirements: an identity of the causes of action and parties. *See Hudson*, 889 N.E.2d at 213. Neither is disputed by the Hampton Parties, so they are met. *See Mitsui Sumitomo Insurance Co., Ltd. v. Moore Transportation, Inc.*, 500 F. Supp. 2d 942, 956-57 (N.D. Ill. 2007). The Hampton Parties have not suggested, for example, how, under the Illinois transactional test which governs the identity of causes of action, the claims here do not arise from the same set of operative facts as in Case 4329. *See Lane v. Kalcheim,* 915 N.E.2d 93, 99-100 (Ill. App. Ct. 2009). Even if they did, this Court's discussion of the factual background in both cases belies any such argument.

For these reasons, Counts I to V are dismissed.

**B.    The Dillinghams (Counts VI to X)**

The Dillinghams assert three categories of claims: (1) fraudulent inducement (Count VI); (2) breach of contract (Count VII); and (3) violations of the IFDA (Counts VIII to X). This Court addresses each category separately.

### 1.    IFDA Claims

The Dillinghams allege that Window World violated the IFDA by offering to sell and selling a franchise to Plaintiffs without providing a copy of a Franchise Disclosure Document within 14 days as required by Section 705/16 of the IFDA. Complaint ¶ 168.

Defendants respond that the Dillinghams' IFDA claims are time-barred. The statute of limitations is an affirmative defense, and the Dillinghams are not required to plead facts to anticipate and defeat this defense. Nonetheless, as with the *res judicata* defense, when the Complaint, as here, sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate. *Independent Trust Corp. v. Stewart Information Services Corp.*, 665 F.3d 930, 935 (7th Cir. 2012); *Best*, 554 F.3d at 700.

The IFDA imposes three statutory periods depending on the type of notice the plaintiffs have of an alleged violation: (1) a three-year state of repose, (2) a one-year statute of limitations and (3) a 90-day statute of limitations. 815 ILCS 705/27; *see also Putzier v. Ace Hardware Corp.*, 50 F. Supp. 3d 964, 977-78 (N.D. Ill. 2014) (finding that the three-year period is a statute of repose). The earliest of those three periods applies. 815 ILCS 705/27. As shown below, this Court only needs to analyze the three-year statute of repose here, and, under 815 ILCS 705/27, that period elapses three years "after the act or transaction constituting the violation upon which it is based."

The parties dispute when the three year statute of repose began to run. Window World argues that the "act or transaction" at issue is the signing of the 2003 and 2007 License Agreements, which occurred more than six years before the Dillinghams filed this action (on June 24, 2013). [30] at 6. The Dillinghams respond that the act or transaction is the November 29, 2011 Final Judgement and

Consent Decree, in which it was determined that the 2003 and 2007 License Agreements were, in fact, franchise agreements. [33] at 6-7.

An instructive case is *Putzier*, 50 F. Supp. 3d at 977, which also involved an IFDA claim. The Court concluded that the sale or offer of the franchise were the pertinent "act[s] or transaction[s] constituting the violation[s]" under Section 6 of the IFDA. *Id.* In reaching that conclusion, the Court rejected an argument similar to the one made here: that the statute of repose began to run when the plaintiff learned of the facts that gave rise to the IFDA claim. *Id.* Other Courts in this District have reached the same conclusion as *Putzier*. *E.g.*, *RWJ Management Co., Inc. v. BP Products North America, Inc.*, No. 09-6141, 2011 WL 101727, at *2 (N.D. Ill. Jan. 12, 2011); *Zeidler v. A & W Restaurants, Inc.*, No. 03-5063, 2006 WL 1898056, at *8 (N.D. Ill. July 6, 2006); *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, No. 94-50392, 1997 WL 811021, at *7 (N.D. Ill. Dec. 29, 1997).

Here, as *Putzier* shows, the three-year statute of repose began to run at the time the License Agreements were signed, in 2003 and 2007, and thus expired in 2006 and 2010, respectively. The Dillinghams bring claims under Sections 5, 6, and 10 of the IFDA. Each Section is triggered by the "offer or sale" (or similar language) of a franchise and requires, among other things, that the franchisor register under the IFDA and supply the franchisee with certain disclosures. 815 ILCS 705/5(1)-(2); 815 ILCS 705/6; 815 ILCS 705/10. As the Dillinghams themselves have pled, Window World violated these Sections when they offered to sell and sold them a

franchise without registering and without making the required disclosures. *See generally* Complaint, Counts VIII to X.

Having established that the three-year statute of limitations commenced when the 2003 and 2007 License Agreements were signed, this Court next considers the two defenses raised by the Dillinghams.

The Dillinghams first raise the Illinois discovery rule. *See Independent Trust*, 665 F.3d at 935, 938. The Dillinghams argue that they had no reason to know they were operating a franchise until the Final Judgment and Consent Decree was issued on November 29, 2011, thereby tolling the statute of repose until that time. [33] at 6-7. However, while a statute of limitations may be subject to the discovery rule, a statute of repose is not. The latter extinguishes the action after a fixed period of time, regardless of knowledge. *Orlak v. Loyola University Health Systems*, 885 N.E. 2d 999, 1003, 1008-09 (Ill. 2007); *Ferguson v. McKenzie*, 780 N.E.2d 660, 664 (Ill. 2001); *Putzier*, 50 F. Supp. 3d at 977-78.

Second, the Dillinghams argue that the three-year statute of repose is tolled by Window World's fraudulent concealment. [33] at 7. The Dillinghams argue that Window World knew the 2003 and 2007 License Agreements were franchise agreements and concealed that information from them. [33] at 8. The Dillinghams argue that they did not discover this concealment until 2011, when the Final Judgment and Consent Decree was entered. [33] at 8.

Unlike the discovery rule, fraudulent concealment tolls a statute of repose. *Orlak*, 885 N.E. 2d at 1009; *Putzier*, 50 F. Supp. 3d at 978. Under Illinois law,

"[w]hen a defendant fraudulently conceals a cause of action from the plaintiff, the plaintiff may commence the action at any time within 5 years of discovery of the action." 735 Ill. Comp. Stat. 5/13-215.

To prove fraudulent concealment, the Dillinghams must show that Window World made misrepresentations or performed acts it knew to be false, with the intent to deceive the Dillinghams; and that the Dillinghams detrimentally relied on those representations or acts. *Orlak*, 885 N.E. 2d at 1009; *Putzier*, 50 F. Supp. 3d at 978-79. When there are no allegations of affirmative acts of concealment, as here, the Dillinghams must show that (1) they could not have discovered the fraud any sooner through the exercise of greater diligence; or (2) the trust and confidence they placed in Window World by virtue of their relationship prevented them from discovering the fraud any sooner. *Orlak*, 885 N.E. 2d at 1009-10; *Putzier*, 50 F. Supp. 3d at 978-79.

Once again, *Putzier* is instructive. In that case, the plaintiffs (the franchisees), alleged, similar to here, that the defendant (the franchisor) provided misleading sales projections and concealed and suppressed accurate data. 50 F. Supp. 3d at 978. The plaintiffs had failed to allege facts showing that their relationship with the defendant prevented their discovery of the alleged fraud. *Id.* at 978-79. Nor did the plaintiffs allege—nor could they—that the franchisors owed fiduciary duties to their franchisees. *Id.* at 979. On these facts, the Court granted the motion to dismiss, rejecting the fraudulent concealment defense to the application of the statute of repose. *Id.*

Likewise, in *Hengel, Inc. v. Hot 'N Now, Inc.*, the Court also rejected a fraudulent concealment defense to the running of the statute of repose. No. 91-7616, 1995 WL 221869, at *2-4 (N.D. Ill. April 12, 1995). The plaintiff (the franchisee) ran an unprofitable franchise, and alleged that the defendant (the franchisor) hid the fact that it was required to disclose an Illinois offering circular in violation of the IFDA. *Id.* at *3. The Court rejected this argument and granted the defendant's motion for judgment on the pleadings. *Id.* at *3-4. It explained that the plaintiff could have discovered the defendant's violation had it exercised ordinary diligence. *Id.* at *3.

This case mirrors *Putzier* and *Hengel*. The Dillinghams also argue that Window World intentionally concealed that it was a franchisor. [33] at 7-8. Yet the Dillinghams fail to identify any affirmative acts committed by Window World that could form the basis for fraudulent concealment. Further, as in *Putzier* and *Hengel*, the Dillinghams have not shown that they could not have discovered that Window World was a franchisor if they had exercised ordinary diligence.

For these reasons, the three-year statute of repose bars the Dillinghams' IFDA claims.

## 2.    Fraudulent Inducement Claim

Window World seeks to dismiss the fraudulent inducement claim with prejudice, arguing that it is not pled with particularity under Rule 9(b) and the Dillinghams ratified any alleged fraud. [30] at 7-11. The Dillinghams do not contest these arguments but rather concede that their fraud claim lacks sufficient

particularity and seek leave to file an Amended Complaint pursuant to Rule 15. [33] at 10. This Court thus dismisses Count VI without prejudice. *See Independent Trust*, 665 F.3d at 943 (leave to amend under Rule 15 should be granted freely).

### 3. Breach of Contract Claim

The Dillinghams argue that Window World materially breached the License Agreements by: (1) taking their two territories without justification; and (2) failing to protect their territories. Complaint ¶ 156. The Dillinghams also argue that Window World breached the implied covenant of good faith and fair dealing. Complaint ¶ 157.

Initially, this Court must resolve a tacit disagreement about which law governs the 2003 and 2007 License Agreements. The Agreements contain a North Carolina choice of law clause, [1-9] at 14 ¶ 13(e); [1-10] at 11 ¶ 23, and Window World applies North Carolina law in its motion papers, [30] at 12-15. Yet the Dillinghams apply Illinois law without addressing the choice of law clauses. [33] at 10-13. The parties have not identified any relevant differences between Illinois and North Carolina law.

Based on choice of law principles, this Court applies the choice of law clause to the contractual dispute while also considering the IFDA claim under Illinois law. That is the approach the Seventh Circuit took in *Sound of Music Co. v. Minnesota Mining & Manufacturing Co.*, 477 F.3d 910, 915, 917-18 n.2 (7th Cir. 2007), where the Court applied Minnesota law to the contractual dispute while nonetheless

considering the IFDA claim under Illinois law because the statute contains an anti-waiver provision, 815 ILCS 705/41.

Turning to the breach of contract claim, Window World makes two arguments. First, Window World argues that the Dillinghams cannot bring a breach of contract claim because they materially breached the 2003 and 2007 License Agreements first. [30] at 12-13. Window World argues that the Dillinghams breached the Agreements in October 2009—five months before Window World terminated the Agreements—when they let the Prairie Land Territory "coast." [30] at 13 (citing Complaint ¶¶ 79-80). Both License Agreements required the Dillinghams to "at all times use best efforts." 2003 License Agreement [1-9] at 6 § 8; 2007 License Agreement [1-10] at 4 § 10. This argument fails at this initial stage of the proceedings.

As the Dillinghams argue, Window World may have waived this argument (setting aside whether there, in fact, was a breach). [33] at 10-12. Waiver occurs when: (1) the waiving party (here, Window World) is the non-breaching party; (2) the breach does not involve a total repudiation of the contract; (3) Window World is aware of the breach; and (4) Window World intentionally waives its right to excuse or repudiate its own performance by continuing to perform or accept the partial performance of the breaching party (here, the Dillinghams). *Wheeler v. Wheeler*, 263 S.E.2d 763, 766-67 (N.C. 1980); *Lonesource, Inc. v. United Stationers Supply Co.*, No. 11-33, 2013 WL 1309290, at *7-8 (E.D.N.C. March 28, 2013); *G.E.B., Inc. v. QVC, Inc.*, 129 F. Supp. 2d 856, 862-63 (M.D.N.C. 2000).

Here, the Dillinghams have pled the elements of waiver.  The Dillinghams allege that they informed Window World about their sales strategy in the Southern Illinois and Prairie Land Territories and Window World concurred with that strategy.  Complaint ¶ 79.  The Dillinghams also allege that they let the Prairie Land Territory temporarily coast so that they could regain sales in the Southern Illinois Territory after the departure of four salesmen.  *Id.*

Second, the parties dispute whether Window World breached the exclusivity requirements of the 2003 and 2007 License Agreements.  [30] at 14; [33] at 13.  The Dillinghams cite only the exclusivity clause of the 2007 License Agreement; they cite nothing from the 2003 License Agreement that Window World breached.  *See* [33] at 13.  The 2007 License Agreement's exclusivity clause states:

> **2. <u>TRADE AREAS</u>.** … The trade area to be reserved exclusively for LICENSEE by the execution hereof shall be that area which is located within the geographic boundaries of the counties of Effingham, Champaign, Vermillion, Douglas, Edgar, Coles, Cumberland, Clark.

2007 License Agreement [1-10] at 2 § 2.

Window World disagrees that it undertook any obligations to protect the Dillinghams from encroachment by competitors, including other licensees, by reserving the Prairie Land Territory "exclusively" for them.  [38] at 13-14.  But this Court cannot resolve conflicting interpretations of this language at this early stage, especially in light of its obligation to draw all inferences in favor of the Dillinghams as the non-moving party.  *See Yeftich*, 722 F.3d at 915.

Although the Dillinghams have pled a viable breach of contract claim, that claims appears to be time-barred.  This Court can invoke an affirmative defense,

such as the statute of limitations, *sua sponte* if the defense is apparent from the Complaint. *Best v. City of Portland*, 554 F.3d 698, 700 (7th Cir. 2009). Breach of contract claims have a three-year statute of limitations in North Carolina. N.C. Gen. Stat. § 1-52(1). The statute of limitations commences when the claim accrues, which is at the time the Dillinghams had notice of the breach. *Henlajon, Inc. v. Branch Highways, Inc.*, 560 S.E.2d 598, 603 (N.C. App. Ct. 2002).

Here, as shown by the Complaint, the statute of limitations likely began to run either: (1) on March 12, 2010, when Window World told the Dillinghams that they were revoking their two Territories and the Dillinghams had 90 days to finish their business there; or (2) on June 10, 2010, at the conclusion of the letter's 90-day period. Complaint ¶ 80. The Dillinghams do not plead that any breach occurred after June 10, 2010.

The breach of contract claim is time-barred even if the statute of limitations began running on the later date, June 10, 2010. This lawsuit was filed June 24, 2013, which is two weeks after the three year statute of limitations expired.

Despite having concluded that the statute of limitations likely applies, this Court nonetheless dismisses Count VII only without prejudice. The Dillinghams: (1) did not brief the issue (because it was not raised by Window World); (2) are not required to anticipate and defeat affirmative defenses, such as the statute of limitations, *see Independent Trust*, 665 F.3d at 935; and (3) might be able to plead additional facts or otherwise defeat a statute of limitations defense, provided they

can do so consistent with the facts and Rule 11 of the Federal Rules of Civil Procedure.[1]

## IV.     Conclusion

Defendants' motion to dismiss [30] is granted.  Counts I to V and VIII to X are dismissed with prejudice.  Counts VI (fraudulent inducement) and VII (breach of contract) are dismissed without prejudice.  This Court grants the Dillinghams leave until May 28, 2015 to file an amended complaint re-pleading Counts VI and VII only, if counsel can do so consistent with their obligations under Rule 11.  In their Amended Complaint, if any, the Dillinghams should make clear that any breach of contract claim is not brought by Suntec and is not against Ms. Deem and Tammy Whitworth.  Defendants shall have until June 11, 2015, to file an answer or otherwise respond.

A status hearing is set for June 18, 2015 at 9:45 a.m. in Courtroom 1725.


Dated: May 7, 2015

Entered:

John Robert Blakey
United States District Judge

---

[1] Relatedly, Window World argues that SunTec cannot sue for breach of contract because it is not a party to the license agreements.  [30] at 11.  Plaintiffs concede this argument.  [33] at 10 n. 2.  Plaintiffs also concede that the breach of contract claims should be dismissed against Ms. Deem and Tammy Whitworth, two of the individual Defendants, as they were not parties to the contract.  [33] at 10 n. 2.  Count VII is thus dismissed with prejudice as to Suntec, Ms. Deem and Tammy Whitworth.